IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

TODD A.,[1]
    Plaintiff,

v.                                                      Civil No. 3:20cv594 (DJN)

KILOLO KIJAKAZI,[2]
Acting Commissioner of Social Security,
    Defendant.

**MEMORANDUM OPINION**

On February 5, 2018, Todd A. ("Plaintiff") applied for Social Security Disability Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"), alleging disability from retinal disorder, diabetes, diabetes mellitus with peripheral neuropathy, chronic kidney disease, degenerative disc disease and migraines, with an alleged onset date of May 9, 2017. The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a written decision, and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred in failing to properly consider whether the opinions of Plaintiff's neurologist, Dr. Amandeep Sangha, were consistent with or supported by the record as required by the regulations. (Mem. in Support of Pl.'s Mot. For Summ. J. ("Pl.'s Mem.") (ECF No. 25) at 8.)

This matter now comes before the Court on the parties' cross-motions for summary judgment, rendering the matter ripe for review.[3] For the reasons that follow, the Court hereby DENIES Plaintiff's Motion for Summary Judgment (ECF No. 24), GRANTS Defendant's Motion for Summary Judgment (ECF No. 28) and AFFIRMS the final decision of the Commissioner.

## I.  PROCEDURAL HISTORY

On February 5, 2018, Plaintiff filed applications for DIB and SSI with an alleged onset date of May 9, 2017. (R. at 206, 210.) The SSA denied these claims initially on July 29, 2019, and again upon reconsideration on August 6, 2019. (R. at 16-18.) At Plaintiff's written request, the ALJ held a hearing on July 10, 2019. (R. at 36.)

On July 29, 2019, the ALJ issued a written opinion, denying Plaintiff's claims and concluding that Plaintiff did not qualify as disabled under the Act, because "the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 24.) On

---

[3]  The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

June 1, 2020, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision subject to review by this Court as the final decision of the Commissioner. (R. at 1.)

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "must uphold the ALJ's decision if the ALJ 'applied correct legal standards' and if the 'factual findings are supported by substantial evidence.'" *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 383-84 (4th Cir. 2021) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). "The threshold for such evidentiary sufficiency is not high." *Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020). As the Supreme Court has recently reminded courts, substantial evidence "means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

To determine whether substantial evidence exists, courts must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgement for that of the [ALJ]." *Dowling*, 986 F.3d at 383 (quoting *Craig*, 76 F.3d at 589). In considering the decision of the Commissioner based on the

3

record as a whole, courts must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, we defer to the ALJ's decision." *Shinaberry*, 952 F.3d at 123. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law."). Importantly, the courts "do not reflexively rubber-stamp an ALJ's finding." *Dowling*, 986 F.3d at 383. "To pass muster, ALJs must 'build an accurate and logical bridge' from the evidence to their conclusions." *Arakas v. Comm'r of Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. §§ 404.1520(a)(4), 404.916(a)(4); *see Shinaberry*, 952 F.3d at 118-19 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. §§ 404.1520(a)(4)(i), 404. 920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity ("RFC"), accounting for the most that the

claimant can do despite her physical and mental limitations. §§ 404.1545(a), 416.945(a). At step four, the ALJ assesses whether the claimant can perform her past work given her RFC. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). This review focuses on the ALJ's analysis of Plaintiff's RFC.

### III. THE ALJ'S DECISION

On July 10, 2019, the ALJ held a hearing during which Plaintiff (represented by counsel) and a vocational expert ("VE") testified. (R. at 36-65.) On July 29, 2019, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 18-29.)

The ALJ followed the five-step evaluation process established by the Social Security Act in analyzing Plaintiff's disability claim. (R. at 22-29.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 9, 2017, his alleged onset date. (R. at 23.) At step two, the ALJ found that Plaintiff had the following severe impairments: retinal disorder, diabetes mellitus with peripheral neuropathy, chronic kidney disease, degenerative disc disease and migraines. (R. at 23.) At step three, the ALJ concluded that Plaintiff did not suffer from an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 24.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform light work with additional limitations. (R. at 24.) Specifically, Plaintiff could stand and/or walk a total of four hours in an eight-hour workday; he could frequently crouch or crawl; he could occasionally climb ramps or stairs, balance, stoop or kneel; and, he could never climb ladders, ropes or scaffolds. (R. at 24.) He was limited to monocular vision, but he retained the ability to drive, read large print and navigate workplace hazards. (R. at 24.) Additionally, Plaintiff could

tolerate occasional exposure to vibration, but he could never work at unprotected heights or around moving mechanical parts. (R. at 24.) Plaintiff could also occasionally push or pull with his lower extremities, and he could frequently push, pull, handle and finger items with his non-dominant left upper extremity. (R. at 24-25.) Finally, the ALJ found that Plaintiff required the use of a cane to ambulate. (R. at 25.)

At step four, the ALJ determined that Plaintiff could not perform any past relevant work. (R. at 27.) However, at step five, the ALJ found that, considering Plaintiff's age, education, work experience and RFC, Plaintiff could perform jobs existing in significant numbers in the national economy, including the representative occupations of cashier, non-postal mail sorter, and router. (R. at 28-29.) Accordingly, the ALJ concluded that Plaintiff did not qualify as disabled under the Act. (R. at 29.)

## IV. ANALYSIS

Plaintiff, age thirty-eight at the time of this Memorandum Opinion, previously worked as a stocker and department manager at Walmart. (R. at 46.) He applied for DIB alleging disability from retinal disorder, diabetes, diabetes mellitus with peripheral neuropathy, chronic kidney disease, degenerative disc disease and migraines, with an alleged onset date of May 9, 2017. (R. at 206, 210.) Plaintiff's appeal to this Court alleges that the ALJ erred in failing to properly consider whether Dr. Sangha's opinions were consistent with or supported by the record as required by the regulations. (Pl.'s Mem. at 8.) For the reasons set forth below, the ALJ did not err in her decision.

As outlined in the new regulatory scheme, an ALJ is "not required to articulate how [they] considered each medical opinion or prior administrative medical finding from one medical source individually." §§ 404.1520c(b)(1), 416.920c(b)(1). Rather, an ALJ must only "articulate

6

how [they] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis." §§ 404.1520c(b)(1), 416.920c(b)(1). In considering the decision of the Commissioner based on the record as a whole, the court must "take into account whatever in the record fairly detracts from its weight." *Breeden*, 493 F.2d at 1007 (quoting *Univ. Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock v. Astrue*, 667 F.3d 470, 477 (4th Cir. 2012).

### A. Dr. Sangha's Opinion

Dr. Sangha, a treatment provider and neurologist, started treating Plaintiff on August 2, 2017, after Plaintiff presented with complaints of left-sided weakness, headache, tightness and vision problems. (R. at 27, 356.) In October 2018, Dr. Sangha completed a form indicating that he began treating Plaintiff on a quarterly basis for foot numbness and back pain. (R. at 27, 652.) On the Physical Medical Assessment Form, Dr. Sangha indicated that Plaintiff would be off-task twenty-five percent of the workday and would miss four to five workdays per month. (R. at 652.)

Dr. Sangha also provided that Plaintiff could sit for up to four hours and stand/walk for less than two hours in an eight-hour workday; did not require an assistive device; could lift and carry twenty pounds occasionally and less than ten pounds frequently; could frequently reach, handle, finger and feel; could occasionally push/pull with his right hand; could frequently reach and occasionally handle, finger, feel and push/pull with his left hand; and could occasionally operate foot controls; could occasionally perform postural activities; and be exposed to environmental conditions. (R. at 652-54.) He also noted that Plaintiff could shop; travel without

7

a companion; walk a block at a reasonable pace on rough or uneven surfaces; climb a few steps at a reasonable pace with the use of a single hand rail; use public transportation; prepare a simple meal and feed himself; care for personal hygiene; and sort, handle and use paper files. (R. at 654-55.)

### B. The ALJ Did Not Err in Explaining the Persuasiveness of Dr. Sangha's Opinion Under the New Regulations.

Contrary to what Plaintiff asserts, substantial evidence supports the ALJ's assessment of Dr. Sangha's opinion. During the sequential analysis, when the ALJ determines whether the claimant has a medically determinable severe impairment, or combination of impairments, that would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluations that have been ordered. 20 C.F.R. §§ 404.1512, 404.1520c, 416.912, 416.927. When the record contains several medical opinions, the ALJ will not assign any weight, or defer to an opinion, but instead articulate the opinion's persuasiveness. §§ 404.1520c(a), 416.920c(a).

Historically, for claims filed before March 27, 2017, the ALJ gave a treating medical source's opinion controlling weight if medically acceptable clinical and laboratory diagnostic techniques supported it and it comported with other substantial evidence in the record. §§ 404.1527(c)(2), 416.927(c)(2); *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017); *Craig*, 76 F.3d at 590; SSR 96-2p. Recently, however, for claims filed on or after March 27, 2017, new regulations define what constitutes a medical opinion and how medical opinions are treated. 20 C.F.R. §§ 404.1513(a)(2), 404.1520c, 416.913(a)(2). Here, Plaintiff filed for SSI and DIB on February 5, 2018; thus, the new regulations apply. (R. at 66.)

8

The new regulations define a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform physical, mental or other demands of work activity or adapt to environmental conditions. §§ 404.1513(a)(2), 416.913(a)(2). According to the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." §§ 404.1520c(a), 416.920c(a). Moreover, when articulating the consideration of a medical opinion, the ALJ need not discuss how each medical opinion from one medical source was considered. §§ 404.1520c(b)(1), 416.920c(b)(1). Rather, when a medical source provides multiple medical opinions, the ALJ will articulate the persuasiveness of those medical opinions in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5), as appropriate. *Id.* These factors include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and, (5) other factors. §§ 404.1520c(c), 416.920c(c). Among the aforementioned factors, supportability and consistency are the most important. §§ 404.1520c(b)(2), 416.920c(b)(2). Importantly, in determining the persuasiveness of a medical source, when presented with multiple medical opinions from a medical source, the ALJ need not discuss each factor, but instead need only address how the ALJ considered the supportability and consistency of a medical source's medical opinions, in relation to the other objective medical evidence. §§ 404.1520c(b)(2), 416.920c(b)(2).

Additionally, the ALJ need not use any "particular language or adhere to a particular format" in issuing her decision. *Woodson v. Berryhill*, 2018 WL 4659449, at *6 (E.D. Va. Aug. 7, 2018), *report and recommendation adopted*, 2018 WL 4658681 (E.D. Va. Sept. 27, 2018); *see*

*also Gassaway v. Colvin*, 2013 WL 2389894, at *6 (E.D. Va. May 28, 2013) ("There is no particular language or format that an ALJ must use in his . . . analysis as long as there is sufficient development of the record and explanation of the findings to permit meaningful review." (alteration in original) (citations omitted)). Thus, even under the new regulatory scheme, the ALJ need not necessarily use the words "supportability" or "consistency," as long as the ALJ still performs the requisite analysis of these factors.

Accordingly, the requisite analysis under the new regulatory scheme hinges on the ALJ's articulation of a source's persuasiveness, which he or she determines according to various factors, the most significant of which are the source's consistency and supportability. In contrast, when an ALJ fails to consider a medical opinion wholly, and does not articulate its persuasiveness, such conduct may violate 20 C.F.R. §§ 404.1520c and 416.920c. *See Richard P. v. Saul*, 2021 WL 2152566, at *7 (W.D. Va. May 27, 2021) (holding that the ALJ erred by characterizing an entire medical opinion as "a statement on an issue reserved to the Commissioner").

### 1. *The ALJ Properly Considered the Supportability of Dr. Sangha's Opinion.*

Contrary to what Plaintiff asserts, the ALJ properly considered the supportability of Dr. Sangha's opinion. To assess supportability, the ALJ must consider whether a medical source considered relevant "objective medical evidence and [presented] supporting explanations." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). The fact that the ALJ does not specifically use the term "supportability" bears no relevance to this analysis, as the regulations do not require the ALJ to use any "particular language or adhere to any particular format" in her decision. *Woodson*, 2018 WL 4659449, at *6. Rather, the ALJ must simply comply with a "reasonable articulation standard" that enables "a reviewing court to trace the path of an adjudicator's

reasoning, and will not impede a reviewer's ability to review a determination or decision, or a court's ability to review [the ALJ's] final decision." 82 Fed. Reg. 5844-01 at 5858.

In her opinion, the ALJ summarized and evaluated the medical and other evidence. (R. at 25-27.) Next, the ALJ considered the medical opinions of Drs. Sangha, Bert Spetzler and Daniel Camden. (R. at 26-27.) The ALJ also reviewed the relevant testimony from Plaintiff and an impartial VE. (R. at 23-29.) After establishing the medical and other evidence, the ALJ concluded that the record, including Dr. Sangha's own treatment notes, was not consistent with Dr. Sangha's findings, because the record did not indicate "that [Plaintiff] . . . had exacerbations during the period at issue so significant as to interfere with his daily activities, his self-care, and his general independence." (R. at 27; *see also* R. at 26 (citing Exhibits 3F, 10F and 21F, which contain Dr. Sangha's treatment notes).)

Specifically, Plaintiff had complained of "numbness and tingling in his extremities [due to his diabetes mellitus with peripheral neuropathy and degenerative disease in his lumbar spine], and treatment providers occasionally note[d] reduced lower extremity strength and antalgic gait." (R. at 26 (citing Exs. 5F, 12F, 18F.) Dr. Sangha also sometimes noted that Plaintiff favored his left leg when walking and had a slower gait. (R. at 26, 349, 356, 887.) Nevertheless, he routinely recorded that Plaintiff had normal bulk, tone, 5/5 strength, and he often noted that Plaintiff had a normal gait. (R. at 26, 356, 532, 608, 865, 887, 909.)

Further, the ALJ explained that Plaintiff suffered from migraines, but Dr. Sangha's notes reflect that Plaintiff's condition improved when he began taking gabapentin. (R. at 26; *see also* 531 (containing Dr. Sangha's notes, which report that Plaintiff's headaches improved when he

11

was taking gabapentin[4]), 589 (same).) As the ALJ noted, Plaintiff's headaches remained improved once he ceased taking gabapentin and switched to another medication. (R. at 26; *see also* R. at 863 (containing Dr. Sangha's notes, which report that even after Plaintiff had to cease taking gabapentin due to complications from his kidney condition, Dr. Sangha still remarked that Plaintiff's headaches "[were] overall improved"), 866 (reflecting that Dr. Sangha changed Plaintiff's headache medication to Cymbalta[5] and told Plaintiff to follow up with orthopedics for his shoulder and lumbar radiculopathy complaints, to strictly manage his diabetes and to exercise regularly), 885-88 (reporting that a month after Dr. Sangha changed Plaintiff's headache medication, Plaintiff reported mood issues with Cymbalta, and Dr. Sangha prescribed nortriptyline to help with neuropathic symptoms and tension headache prophylaxis).)

For these reasons, the ALJ properly addressed the supportability factor and thoroughly articulated why Dr. Sangha's own notes did not support his ultimate opinion. *See Gassaway*, 2013 WL 2389894, at *6 (stating that an ALJ need not follow a particular format in her decision, as long as the ALJ develops the record and explains her findings (citations omitted)); *Mary R. v. Saul*, 2021 WL 388463, at *6 (E.D. Va. Jan. 19, 2021) (finding that an ALJ adequately addressed the supportability factor when the ALJ found that a medical provider's opinion "was less supported because [the provider] found extreme limitations even though he observed [the plaintiff] to be cooperative with good eye contact").

---

[4] Gabapentin is an anticonvulsant that is administered orally. *Gabapentin*, Dorland's Illustrated Medical Dictionary (32d ed. 2012).

[5] Cymbalta, whose generic drug name is duloxetine, helps to improve nerve pain in people with diabetes and other chronic pain conditions, among other uses. *Cymbalta – Uses, Side Effects, and More: Uses*, WebMD, https://www.webmd.com/drugs/2/drug-91491/cymbalta-oral/details (last visited November 9, 2021).

12

### 2. *The ALJ Properly Addressed the Consistency of Dr. Sangha's Opinion with the Record.*

The ALJ also adequately addressed the consistency factor when evaluating Dr. Sangha's opinion. Plaintiff argues that the ALJ overlooked the majority of Dr. Sangha's opinion in finding Dr. Sangha's opinion inconsistent with the record. (Pl.'s Mem. at 12.) Specifically, Plaintiff argues that "Dr. Sangha documented a number of other opinions limiting [Plaintiff's] ability to walk, sit, stand, lift, carry, use his upper extremities, use of foot controls, and his ability to engage in postural activities," but the ALJ did not explain whether these opinions were consistent with the record, focusing instead on Dr. Sangha's opinion that Plaintiff would be off-task more than 25% of the time and would miss more than five days of work per month. (Pl.'s Mem. at 12 (citing R. at 652-54).) Further, Plaintiff asserts that the ALJ's discussion of the substance of Dr. Sangha's opinions was too cursory to permit judicial review. (R. at 13-15.)

In response, Defendant contends that the ALJ adequately addressed the consistency factor by reviewing the notes of Plaintiff's treatment providers in detail and the prior administrative medical findings of Drs. Spetzler and Camden. (Def.'s Mem. at 26-27.) Further, Defendant notes that the new regulations do not require the ALJ to summarize every opinion of a claimant's medical provider. (R. at 28.) Defendant also posits that the ALJ's decision must be read as a whole, and he need not repeatedly point to parts of the record that are consistent or inconsistent with a medical provider's opinion if she has already discussed those portions of the record. (R. at 29); *see Kiernan v. Astrue*, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013) ("Where the ALJ analyzes a claimant's medical evidence in one part of his decision, there is no requirement that he rehash that discussion [elsewhere].")

The new regulations explain that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more

13

persuasive the medical opinion(s) . . . will be." §§ 404.1520c(c)(2), 416.920c(c)(2). And as outlined in the new regulatory scheme, an ALJ is "not required to articulate how [she] considered each medical opinion or prior administrative medical finding from one medical source individually." §§ 404.1520c(b)(1), 416.920c(b)(1). Rather, an ALJ must only "articulate how [she] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis." *Id.*

As Plaintiff himself notes, the ALJ explicitly addressed the consistency factor. (Pl.'s Mem. at 12.) According to the ALJ,

> the medical evidence [was] not consistent with Dr. Sangha's findings that the claimant's impairments would cause more than 25 percent time off-task and more than five days of work absences per month, as there is no indication in the record that [Plaintiff had] exacerbations during the period at issue so significant as to interfere with his daily activities, his self-care, and his general independence. As a result, [the ALJ did] not find Dr. Sangha's opinion persuasive.

(R. at 27.)

The Court concurs with Defendant that, when reading the opinion as a whole, the ALJ showed that Dr. Sangha's opinion lacked consistency with the record. (Def.'s Mem. at 25-30.) First, the ALJ recognized that Plaintiff had experienced vision loss due to diabetic nonproliferative retinopathy in both eyes, with significant loss of visual acuity in his left eye. (R. at 25 (citing Exs. 2F-5F, 7F, 9F, 10F-12F, 14F, 16F, 21F, 25F).) However, the ALJ also acknowledged that Plaintiff's vision in his right eye remained in good condition, and that Plaintiff himself testified that he could identify shapes, drive and read large print. (R. at 25 (citing Exs. 19F, 25F, Hearing Testimony).) Second, the ALJ explained that Plaintiff's diabetes with peripheral neuropathy and degenerative disc disease in his lumbar spine caused elevated A1c levels, resulted in complications with his kidney condition, interfered with his vision and

caused numbness and tingling in his extremities, lower extremity strength and antalgic gait. (R. at 26 (citing Exs. 5F-6F, 8F, 12F, 14F, 18F, 24F).)

But as the ALJ remarked, Plaintiff consistently had normal strength in all extremities, and the imaging of his lumbar spine showed only mild degenerative changes. (R. at 26 (citing Exs. 2F-3F, 6F, 10F-12F, 21F).) Plaintiff also demonstrated independence in self-care and could drive, perform simple household chores and care for four horses and a dog. (R. at 26 (citing Ex. 4E; Hearing Testimony).) Likewise, the ALJ highlighted that Plaintiff's kidney disease and migraines were controlled by medication, that these conditions did not significantly worsen during the relevant time period and that Plaintiff maintained a significant ability to perform activities of daily living. (R. at 26 (citing Exs. 4E, 10F, 12F, 14F; Hearing Testimony).) Thus, the ALJ thoroughly summarized and reviewed the record in her opinion.

Moreover, the decision also outlines the opinions of the two state agency physicians who evaluated Plaintiff. As the ALJ stated, Dr. Camden found that Plaintiff could perform light work; could frequently climb ramps or stairs, balance, crouch or crawl; could occasionally stoop or kneel; could never climb ladders, ropes or scaffolds; had limited use of his left eye; and needed to avoid concentrated exposure to vibrations and hazards. (R. at 26 (5A-6A).) Likewise, Dr. Spetzler found that Plaintiff could perform light work; could frequently climb ladders, ropes or scaffolds; could frequently stoop; and had limited use of his left eye. (R. at 26 (Ex. 1A-2A).) The ALJ then went on to summarize Dr. Sangha's opinion which, as discussed above, was far more limiting than the opinions of Drs. Spetzler and Camden, and therefore, inconsistent with them. (R. at 27.) When considering the ALJ's decision altogether, then, the ALJ properly addressed the consistency factor with respect to Dr. Sangha's opinion.

Finally, according to Plaintiff, the ALJ did not adequately address the consistency factor, in part, because the ALJ "did not evaluate a majority of Dr. Sangha's opinions." (Pl.'s Mem. at 12.) The Court disagrees. The new regulations explicitly state that

> it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record.
>
> Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.

§§ 404.1520c(b)(1), 416.920c(b)(1). Thus, the regulations do not require the ALJ to differentiate between and address each of Dr. Sangha's opinions, as Plaintiff suggests. *See id.* (stating that the ALJ will consider all opinions from one source together); Pl.'s Mem. at 12 (asserting that the ALJ only expressly found Dr. Sangha's opinion that Plaintiff would be off-task greater than 25% of the time and would miss more than five days of work per month inconsistent with the record, despite listing Dr. Sangha's other opinions in her decision).) Rather, under these regulations, ALJs do not have to "separately consider each limitation in a medical source's opinion," and may address them as a cohesive whole. *Campbell v. Saul*, 2021 WL 37478, at *16 (D.S.C. Jan. 5, 2021); *Tammi F. v. Saul*, 2020 WL 7122426, at *6 (D. Kan. Dec. 4, 2020) ("The new regulations do not require the ALJ to articulate an explanation for how persuasive she finds every individual opinion of a medical source."). And as Defendant correctly points out, the ALJ's decision, when read in its entirety, thoroughly accounts for all of Plaintiff's impairments and limitations. (Def.'s Mem. at 27; *see* R. at 23-29 (reviewing the record and finding Plaintiff not disabled).) In fact, the ALJ provided an even more limited RFC assessment than Drs. Spetzler and Camden, despite finding their opinions more persuasive than Dr. Sangha's. (R. at

24-27); *see supra* Part III (summarizing the ALJ's RFC assessment). Thus, the ALJ properly considered the consistency of Dr. Sangha's opinion with the record.

## V. CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 25), GRANTS Defendant's Motion for Summary Judgment (ECF No. 28) and AFFIRMS the final decision of the Commissioner. An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

/s/
David J. Novak
United States District Court Judge

Richmond, Virginia
Date: November 16, 2021